**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JACQUONE COLLINS,<br><br>Plaintiff,<br><br>v.<br><br>LT. GARY DRAZDA, et al.,<br><br>Defendants. | Civil Action No.: SAG-25-2416 |

# MEMORANDUM OPINION

Self-represented Plaintiff Jacquone Collins, who is currently incarcerated at North Branch Correctional Institution ("NBCI"), filed his Complaint in this civil rights action against Lt. Gary Drozda, Sgt. Michael Judy, Sgt. Benjamin Crowe, CO David Fitzgerald, CO Michael Faidley, and CO Wesley Appel.[1] ECF No. 1. Defendants filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment on January 23, 2026. ECF No. 17. Collins opposes the Motion. ECF No. 23. Defendants replied. ECF No. 26. Also pending are Defendants' Motions to Seal Exhibits A and C to their dispositive motion. ECF Nos. 19, 21. Collins opposes the Motion to Seal Exhibit A, expressed in the form of a "motion to unseal" it. *See* ECF No. 24. Collins also requests to be appointed counsel. ECF No. 25.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons explained below, Defendants' Motion, construed as a motion for summary judgment, will be granted in part and denied in part and counsel will be appointed to represent Collins.

[1] The Clerk will be directed to amend the docket to reflect the Defendants' full and correct names. This Court also notes that, later in his Complaint, Collins makes reference to other defendants that he did not name in the case caption. ECF 1 at 5. As counsel will be appointed to represent Collins, presumably those issues can be clarified.

## I. Background

The facts are construed in the light most favorable to Collins. In his verified Complaint, Collins claims that he was subjected to excessive force and sexual assault in violation of the Eighth Amendment. ECF No. 1. On June 11, 2024, Collins, who was assigned to Housing Unit 2 was in lockdown due to an inmate assault elsewhere inside NBCI. *Id.* at 5. At approximately 9:30 p.m., Officer Appel approached his cell with another officer and notified Collins of a random cell and strip search. *Id.* Collins complied and was escorted to the showers where he was secured. *Id.* There, he proceeded to remove his clothing in compliance with the strip search procedures until he was naked. *Id.* at 6. All of his clothes were handed out of the shower slot to Officers Appel and Faidley. *Id.* Collins then continued to run his hand through his hair and lift his arms and feet to confirm that he did not possess contraband. *Id.* He also lifted up his genitals and completed the "drop, squat, and cough" protocol to complete the search. *Id.* at 7. Collins states that he completed the full protocol. *See* ECF No. 17-3 at 22 (Prison Strip Search Procedure). At the conclusion of the search, Officer Appel said "you think you tough!" before he and another officer said they were not finished and he needed to "get in 90 degree position and spread [his] buttocks." *Id.* Collins attempted to comply with the order. *Id.* at 8. Appel told him that it was insufficient. *Id.* At this point, Collins felt he was being harassed and asked to speak to a nurse and lieutenant. *Id.*

Appel walked away and Collins pleaded with Faidley to acknowledge that he had fully complied with the search. ECF No. 1 at 9. Faidley agreed but said he could not help because he was too low ranking. *Id.* Appel returned with Sgt. Judy, Sgt. Crowe, and Lt. Drozda but not with a nurse. *Id.* Collins respectfully repeated his pleas that he had complied with the search and was not in possession of any contraband. *Id.* at 9-10; ECF No. 23-1 at 3. Collins requested alternatives such as placing him in a dry cell, using the full body scanner, or using the BOSS chair, which were

all available. ECF No. 1 at 10; ECF No. 23-1 at 3-4. Instead, according to Collins, Defendants wanted to beat him up on the tier "to set an example." *Id.* Lt. Drozda threatened Collins with force if he did not bend over and spread his buttocks as Appel had ordered. *Id.* at 11. Collins told him that if his fingers went any further, they would be inside his anus; Drozda told him, "either do it or I'm a make you do it!" *Id.* Collins insisted that this was not institutional procedure and constituted rape; Drozda asked him if he would comply if Drozda brought him the handbook to show him the policy and Collins agreed. *Id.*; ECF No. 23-1 at 5. Drozda ordered Sgts. Judy and Crowe to turn off the water to the showers and then left the tier. ECF No. 1 at 11. Sgt. Judy was recording this interaction with a hand-held camera. *Id.* at 11-12.

Drozda did not return with a handbook. ECF No. 1 at 12. Collins turned to the camera to explain that he was not refusing orders, disrespecting staff, or posing a threat to himself or others, nor did he have contraband. *Id.* Collins alleges that Drozda, furious, said that all deescalation efforts had failed and then maced Collins several times in the face "through the secure locked shower door" until he emptied the can. *Id.* The camera footage only shows Drozda disbursing one short spray of mace. Exhibit A, ECF 17-2 at 8:00-8:25.

Collins felt a burning sensation and shortness of breath. ECF No. 1 at 12. At the time, Collins suffered from severe asthma and bronchitis. *Id.* at 13. Collins pressed the shower button for water, but none appeared. *Id.* Drozda continued to yell for Collins to comply with the strip search even after he collapsed to the floor. *Id.* Collins states that he repeated the ordered action several times before he was assaulted by what he calls an "extraction team" of three or more officers in tactical gear (including Defendant CO David Fitzgerald) before being dragged from the tier naked. *Id.*; *see* ECF No. 1-1; ECF 1-6. However, the camera footage shows only that after he

had satisfactorily complied with the strip search, the extraction team cuffed Collins behind his back and escorted him down the stairs and out of the housing unit. Exh. A at 9:45-11:00.

He was detained briefly so that he could put on underwear and be photographed. Exh. A at 11:00-13:32. Collins was then taken to see a nurse, who appeared to wipe off Collins's eyes, face, and neck. *Id.* at 13:45-15:50; ECF No. 1 at 13-14. Collins was then escorted to another shower where he was under hot water for only a short time, which he states only caused the mace to spread. Exh. A at 16:05-17:07; ECF No. 1 at 14. Collins again contends that the "extraction team" "dragged" him approximately 150 to 200 yards to lockup, but he can be seen on video walking under his own power while being escorted by two officers. ECF No. 1 at 14; Exh. A at 17:10-21:20. Upon exiting the shower, he appears to slip but the officers catch him before he falls. He continues to walk without incident to another temporary holding cell in a different building. *Id.*

Collins filed a grievance, No. NBCI-0888-24, and a Prison Rape Elimination Act complaint on June 15, 2024. ECF No. 1 at 15; ECF No. 1-2. He was not interviewed about the allegations nor allowed to pursue charges against the officers. ECF No. 1 at 15. Having not received a response from the Warden, Collins appealed his grievance to the Commissioner of Correction on July 21, 2024. *Id.* at 16; ECF No. 1-4. It was found meritorious in part noting that the Warden had failed to timely respond but otherwise denied his appeal on the merits. ECF No. 17-3 at 2. The Warden finally responded on August 22, 2024, denying Collins's grievance. ECF No. 1 at 16; *see* ECF No. 1-2. In the related investigative report, its noted that the strip search policy requires that inmates "spread the buttocks to expose the rectal area for visual search." ECF No. 17-3 at 20-22. Collins appealed to the Incarcerated Individual Grievance Office ("IIGO") on September 18, 2024. ECF No. 1 at 16-17; ECF No. 1-6. After an investigation, the IIGO found that he failed to

state a claim and dismissed Collins's appeal on November 26, 2024. ECF No. 1 at 17; ECF No. 1-8; *see* ECF No. 17-3 at 15, 17-19.

Collins was issued a Notice of Inmate Rule Violation for engaging in a disruptive act and disobeying an order. ECF No. 17-3 at 41. Collins attended a disciplinary hearing on July 26, 2024, at which he states that he was denied representation or presentation of witnesses and video evidence. ECF No. 1 at 15-16; *see* ECF No. 1-3.

Collins took several weeks to recover from the assault. ECF No. 1 at 18. He seeks changes to NBCI strip search and use of force policy as well as one million dollars in damages. *Id.* at 25.

## II. Motions to Seal

Defendants seek to seal Exhibits A and C attached to their memorandum in support of their dispositive motion. ECF Nos. 19, 21. Exhibit A contains video footage of the use of force incident on June 11, 2024. ECF No. 19 at ¶ 3. Exhibit C contains Collins's medical records between June 7, 2024, and September 18, 2025. ECF No. 21 at ¶ 1. Collins filed a Motion to Keep Exhibit A Unsealed, opposing Defendants' motion. ECF No. 24. He challenges the authenticity of the footage, claiming it had been manipulated.[2] *Id.* at 1-2. Collins further claims that significantly more footage of the incident exists, showing it from various angles, but offers none for this Court's consideration. *Id.* at 3.

Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part that: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2025). The rule balances

[2] Benjamin Bradley, a Case Management Specialist at NBCI, attests that Collins viewed the entirety of the video evidence in Exhibit A to Defendants' Motion on January 21, 2026. ECF No. 17-5 at ¶ 3-5.

the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

Because Exhibit A contains surveillance video of the NBCI facility and would provide information about its monitoring systems, creating a security risk if it were publicly available for review. Collins's unsupported allegation that the footage has been altered in some way is not a reason to maintain it in the public record. The Motion to Seal Exhibit A will be granted and the motion to unseal it will be denied.

Exhibit C contains unredacted copies of Collins's medical records slightly before the alleged incident and for approximately the fourteen months following. The Court does not find the sealing to be an overly broad request and the medical records are not essential to the disposition of Collins's claims. Accordingly, the Court will also grant Defendants' Motion to Seal Exhibit C.

## III. Motion to Dismiss or, in the Alternative, for Summary Judgment

### A. Legal Standards

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from

proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Collins was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

The Court is mindful that Collins is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Moreover, a court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### B. Discussion

Defendants assert that the Complaint should be dismissed or summary judgment should be granted in their favor because (1) Defendants are immune from this lawsuit under the Eleventh Amendment, (2) Collins fails to sufficiently allege personal participation, (3) the evidence does not support that Collins was sexually assaulted, and (4) Defendants are entitled to qualified immunity. ECF No. 17-1.

#### i. Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Defendants are Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the claims against Defendants in their official capacities are barred by the Eleventh Amendment, *see Pennhurst State School & Hosp.*, 465 U.S. at 100–01, and will be dismissed with prejudice. Collins's claims for prospective injunctive relief are not barred by the Eleventh Amendment.

#### ii. Excessive Force and Sexual Assault

Defendants argue that Collins has failed to satisfactorily plead that Defendants Faidley, Crowe, Judy, Fitzgerald, and Appel personally participated in violation of his constitutional rights and that there is no evidence to show that he was sexually assaulted.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm" – the subjective component, *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious" – the objective component, *Boone*, 583 F. App'x at 176 (quoting *Williams*, 77 F.3d at 761).

Regarding the "subjective" prong, to determine whether Defendants acted maliciously or sadistically to cause Collins harm, this Court must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The extent of injury incurred is indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38–39. "The use of pepper spray is not per se a cruel and unusual punishment" and "is reasonable when an officer is attempting to maintain order and discipline in [an] institution." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016) (internal citations and quotations omitted).

As Defendants see it, other than Lt. Drozda, Collins has not shown that the other Defendants personally participated in the use of force. While Sgts. Judy and Crowe acted as cameraman and a witness, respectively, the other officers merely sought compliance from Collins. ECF No. 17-1 at 10-11. They conclude that their "personal participation was minimal and well within the reasonable bounds of protocol." *Id.* at 11. They otherwise give short shrift to Collins'

excessive force claim. The Court need not go beyond the first factor – whether there was a need for the application of force – to find that issues of material fact exist.

There is a clear dispute between Collins and the Defendants as to whether Collins complied with Appel's initial orders to comply with the strip search. Collins attests that he complied with the protocol and, even when Appel instructed that he needed to go further in exposing his rectal area, he complied. Still, Appel arbitrarily concluded that it was not good enough and that he was noncompliant. When Collins voiced that he felt he was being harassed, Appel escalated the issue. In contrast, Defendants state that he at no time complied with the order to expose his rectal area for a visual search. If Collins's version of events is true, there was no need for the application of any force at all, whereas under Defendants' theory, their ensuing actions may be reasonable. Because there are disputes as to whether any force was necessary, genuine issues of material fact remain determinative of Collins's claim. Therefore, the Court finds that Defendants are not entitled to summary judgment, and their Motion will be denied as to Collins's excessive force claim.

One of the named Defendants is in a slightly different situation. Unlike the other Defendants, Defendant CO David Fitzgerald is not alleged to have had involvement in the strip search and pepper spraying and is only alleged to have been part of the "extraction team" that twice "dragged" Collins to different locations. ECF 1-6. The video evidence appears to contradict Collins's assertions of dragging. But given Collins's self-represented status and his allegation that there are other angles of video available that would prove this version of the video was modified, this Court will decline to grant summary judgment at this early stage and will allow the excessive force claim against Defendant Fitzgerald to proceed to discovery as well.

As to Collins's sexual assault claim, the Court undertakes a similar analysis. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action;'" instead "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024) (quoting *Hudson*, 503 U.S. at 9–10). Accordingly, a violation of the Eighth Amendment by a prison official occurs "only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). These two requirements include an "objective" element—that "the deprivation alleged [was], objectively, 'sufficiently serious,'" and a "subjective" element—"that prison officials acted with a 'sufficiently culpable state of mind.'" *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834).

On the objective prong, for such a deprivation to be sufficiently serious, it must be "'extreme'—meaning that it poses 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from ... exposure to the challenged conditions.' " *Id.* (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). Further, "in determining whether a risk is 'substantial,' a court must 'assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Jordan v. Maryland*, No. CV ELH-22-1541, 2024 WL 3597203, at *11 (D. Md. July 31, 2024) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

Relevant here, the Fourth Circuit recently explained:

> "Sexual abuse has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society. Nor does it comport with contemporary standards of decency." *Sconiers v. Lockhart*, 946 F.3d 1256, 1259 (11th Cir. 2020) (cleaned up). "A corrections officer's

> intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015); *see also Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). "And even if contact between an officer and an inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable." *Crawford*, 796 F.3d at 257.

*Johnson v. Robinette*, 105 F.4th 99, 122 (4th Cir. 2024). Indeed, "[t]here can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016); *see Woodford v. Ngo*, 548 U.S. 81, 118 (2006) (Stevens, J., dissenting) ("[T]hose inmates who are sexually assaulted by guards ... have suffered grave deprivations of their Eighth Amendment rights."); *Makdessi v. Fields*, 716 F. App'x 148, 153 (4th Cir. 2017) (finding that "injuries from the assault and alleged rape satisfied the first prong by demonstrating "'serious or significant physical ... injur[ies] resulting from the challenged conditions'" of confinement").

The subjective prong requires demonstration that "prison officials acted with a 'sufficiently culpable state of mind.'" *Scinto*, 841 F.3d at 225 (citing *Farmer*, 511 U.S. at 834). "'Deliberate indifference is a very high standard,' and 'a showing of mere negligence will not meet it.'" *Ford v. Hooks*, 108 F.4th 224, 230 (4th Cir. 2024) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)). "The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97–98 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834, 837–38). Ultimately, "[i]t is not enough that the prison official should have recognized the risk

and the inadequacy of his response. Instead, the official 'actually must have perceived' both." *Ford*, 108 F.4th at 230 (quoting *Parrish ex rel. Lee*, 372 F.3d at 303). A plaintiff can prove "actual knowledge of a substantial risk 'in the usual ways, including inference from circumstantial evidence.' In other words, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor v. Pugh*, 817 F.3d 123, 127–28 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834, 837–38)).

Defendants argue that the strip search was solely visual and was conducted in a private space due to "an incarcerated individual altercation and the need to search for contraband pursuant to that altercation." ECF No. 17-1 at 13. Collins does not contest that the search was visual and private. However, his claim is that once he complied with the strip search protocol, the orders to repeat the portions involving exposing his rectum were not for any penological purpose, but rather to harass and humiliate him. Collins also challenges his removal from the tier while fully naked. While the Court understands that Collins felt belittled by repeating these actions, nothing in the record demonstrates that a sexual assault occurred. None of the Defendants physically touched Collins's genitals nor does Collins allege that he suffered any injury as a result. The requirements of the strip search, though Collins may find it embarrassing, do not pose a substantial risk of harm to him, nor is there any evidence that Defendants were aware of and disregarded a risk.

To the extent Collins sought to bring a claim under the PREA, his claim must fail. Nothing in the PREA suggests that Congress intended to create a private right of action for prisoners to sue for non-compliance. *See Williams v. Dovey*, No. CV DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07–cv–229, 2008 WL 3851294, at *3

(D. Vt. Aug.13, 2008); *Byrd v. S.C. Dep't of Corr.*, No. CIV.A. 5:11-3340-MGL, 2013 WL 5309759, at *11 (D.S.C. Sept. 19, 2013); *Chao v. Ballista*, 772 F. Supp. 2d 337, 341 n. 2 (D. Mass. 2011); *McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n. 2 (W.D.N.Y. 2014); *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 515, 766 S.E.2d 751 (2014) ("PREA merely authorizes grant money, and creates a commission to study the [prison rape] issue..."). As such, Defendants are entitled to summary judgment on Collins's sexual assault claim and their Motion will be granted to that extent.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. The Complaint is dismissed with prejudice against Defendants in their official capacities. Judgment is entered in favor of Defendants as to the Eighth Amendment sexual assault claim. The Motion is otherwise denied as to his Eighth Amendment excessive force claim. Defendants shall answer the Complaint within 30 days. Because Collins' Eighth Amendment excessive force claim will proceed to discovery, his Motion to Appoint Counsel (ECF No. 25) will be granted.

A separate Order follows.

August 26, 2026
Date

/s/
Stephanie A. Gallagher
United States District Judge